# 97 DTA 128

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE SAN JUAN

ZAIRA OSTOLAZA LOURIDO
DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR
Querellantes-Recurridos

v.

LUIS ORTEGA H/N/C BAIROA TIRE CENTER & CAR CARE
Querellado-Recurrente

Núm. KLAA-96-00001

San Juan, Puerto Rico, a 9 de junio de 1997

Panel integrado por su presidente, Juez Rivera de Martínez
y los Jueces Cabán Castro y Rivera Pérez

Cabán Castro, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante el presente recurso se nos solicita la revisión de una resolución del Departamento de Asuntos del Consumidor (DACO) de 21 de julio de 1995. Mediante dicha resolución se confirmó otra de 4 de mayo de 1995 en la que se declaró con lugar una querella instada por la recurrida, Zaira Ostolaza Lourido, y se ordenó al recurrente devolverle la suma de $1,500.00. El recurrente agotó el trámite administrativo y oportunamente solicitó revisión judicial.

Los hechos que dan lugar a la acción se iniciaron cuando la recurrida llevó su vehículo marca Volvo 760 GLE, modelo 1983, al taller de mecánica del recurrente para que le hiciera algunas reparaciones en el motor. Específicamente se acordó la reparación de la tapa del bloque del motor, que estaba averiada debido a un aparente calentamiento excesivo del mismo. En el proceso se detectó que era necesario también reparar o cambiar la bomba de aceite y otras piezas que ninguna de las dos partes especifica. El estimado del precio de reparación ascendió a $3,000.00. Las partes convinieron dejar el vehículo en el taller del recurrente en lo que la recurrida conseguía el dinero para pagar la reparación acordada.

El vehículo estuvo algunos meses █ en el taller hasta que la recurrida se presentó y le ofreció $2,000.00 para que se le entregara el auto con las reparaciones realizadas hasta esa fecha. Consta en los autos copia de la hoja de servicios, fechada 23 de febrero de 1994, en la que se informan los trabajos de reparación de la tapa del bloque y la bomba de aceite, además de montar las flautas de las válvulas y caballetes. Se indica, además, que el servicio tiene 30 días de garantía, que el pacto de reparación fue de $3,000.00 y que el precio se ajustó a $2,000.00.

Luego de entregado el vehículo, la recurrida acudió al taller en dos o tres ocasiones para quejarse de problemas con el vehículo. En dos ocasiones indicó que el carro se le había "quedado", expresión que comúnmente se usa para referirse a una avería que impide la marcha del auto. Alega el recurrente que la Sra. Ostolaza expresó que, según le habían dicho a ella, por los $2,000.00 que pagó le tenían que entregar el vehículo "como nuevo".

Según la prueba de DACO, luego de las reparaciones el vehículo continuó con filtraciones de aceite del motor, no le funcionaba la bocina, la aguja de la temperatura ni el acondicionador de aire. La recurrida alegó que estas partes estaban funcionando bien cuando dejó el vehículo en el taller del querellado.

El 7 de marzo de 1994 la recurrida radicó una querella ante DACO en la que se alegó incumplimiento de garantía por las reparaciones realizadas. El 17 de marzo de 1994 un técnico de la agencia inspeccionó el vehículo y preparó un informe que lee como sigue:

*"El querellado no se presentó a la residencia de la querellante para la inspección del vehículo arriba descrito.*

*No obstante, procedí a inspeccionar el vehículo, luego de esperar por el querellado bastante tiempo. Traté de encender el motor del vehículo en cuestión, no logrando dicho propósito porque dicho motor se encontraba en tan pésimas condiciones, ya que presentaba aceite de motor*

*desparramado por distintas áreas, además de cablería suelta y mangas desconectadas. O sea, que por la cantidad de dinero que pagó la querellante al Sr. Luis Ortega, se suponía que dicho vehículo funcionara en perfectas condiciones.*

*Costo para que dicho vehículo trabaje en condiciones óptimas es de $2,000.00."*

El 25 de octubre de 1994 se celebró la vista administrativa del caso. El Oficial Examinador determinó, a solicitud del querellado, que se debía realizar una reinspección del vehículo para verificar si se habían hecho las reparaciones. El 16 de diciembre de 1994 otro técnico de DACO reinspeccionó el vehículo y preparó el siguiente informe:

*"En la fecha de epígrafe se inspeccionó la unidad motivo de esta querella notando al tratar de prenderla que aparentemente estaba fuera de tiempo.*

*Me entrevisté con el querellado en relación al caso, poniéndole alternativas, ejemplo devuelve a la parte querellante dinero $1,000.00 ó $1,500.00 o reparar, pero este indicó que no repararía ni devolvería dinero y que dejaría la decisión en manos de su abogada.*

*La querellada por no tener confianza en éste solicitó devolución del dinero pagado."*

Posteriormente DACO dictó resolución el 4 de mayo de 1995 en la que se ordenó al recurrente restituir $1,500.00 a la recurrida.

Agotado el trámite administrativo, el recurrente acude ante nos con los siguientes señalamientos de error:

*"1. Erró DACO en proceder afirmando el poder del inspector para ordenar devoluciones parciales de las prestaciones vis-a-vis lo ordenado en la vista administrativa del 25 de octubre de 1994.*

*2. Erró DACO al tomar una decisión basada en meras alegaciones de la querellante-recurrida y en violación o alteración del convenio entre las partes y sin oportunarle (sic) cuestionar la misma en vista pública."*

## II

Cuando la recurrida dejó su vehículo en el taller de mecánica mientras conseguía el dinero para pagar las reparaciones se constituyó un contrato de depósito entre las partes. El Código Civil tipifica el depósito como un contrato gratuito, salvo pacto en contrario, sobre cosas muebles. Puede constituirse extrajudicialmente, sea el depósito necesario o voluntario. Código Civil, arts. 1660-1662, 31 L.P.R.A. secs. 4641-4643. Depósito voluntario es aquel en que se hace la entrega por la voluntad del depositante. Código Civil, art. 1663, 31 L.P.R.A. Sec. 4651.

Sobre las obligaciones del depositario el Codigo dispone que el depositario está obligado a guardar la cosa y restituirla, cuando le sea pedida. Art. 1666, 31 L.P.R.A Sec. 4661. Su responsabilidad en cuanto a la guarda y pérdida de la cosa, está remitida a lo dispuesto en la parte general de las obligaciones. *Id.*

En dicha parte general, el artículo 1047 del Código dispone:

*"El obligado a dar alguna cosa lo está también a conservarla con la diligencia propia de un buen padre de familia".* ■

El artículo 1054 del Código Civil dispone:

*"Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren el tenor de aquéllas."* ■

Y el artículo 1057 dispone:

*"La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar.*

*Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia."* ■

En cuanto a la prueba de las obligaciones dispone el artículo 1168: ■

*"Incumbe la prueba de las obligaciones al que reclama su cumplimiento, y la de su extinción al que la opone."*

La recurrida dejó su auto en el taller del recurrente durante un tiempo. Luego de efectuadas ciertas reparaciones lo recogió y pagó por los servicios $2,000.00. Insatisfecha con el resultado de las reparaciones regresó al taller en varias ocasiones. Fue en la segunda ocasión en que se quejó por la disfunción del mecanismo para subir los vidrios de las ventanas, la bocina, la aguja de la temperatura y el acondicionador de aire. Estas reparaciones no estaban incluidas en el acuerdo entre las partes, por lo que no era obligación del recurrente repararlas. Su responsabilidad podría proceder de haber incumplido la obligación, como depositario, de conservar el auto en el estado en que se le entregó. Puesto que se trataba de una obligación en la que no se especificó la diligencia a prestarse, el criterio que debemos aplicar es el de la diligencia que se exigiría a un buen padre de familia.

Sin embargo, la prueba sobre el incumplimiento de esta obligación correspondía a la recurrida. Esta alegó ante DACO que los mecanismos de subir y bajar las ventanas, la bocina, la aguja de la temperatura y el aire acondicionado estaban funcionando cuando dejó el carro en el taller y que no funcionaban cuando lo recogió. Aparte de su alegación no hay ninguna otra prueba. La recurrida no informó estos desperfectos cuando dejó el vehículo, ni siquiera cuando regresó la primera vez porque el carro se le había *"quedado"*. Si los desperfectos ocurrieron mientras el auto estaba en el taller, sin duda ello sería atribuible a culpa o negligencia del depositario y entonces éste estaría obligado a indemnizar los daños. Pero en ausencia de prueba, que correspondía presentar a la recurrida, no podemos presumir la culpa o negligencia del depositario.

Entre las partes también hubo un contrato de arrendamiento de servicios. El artículo 1434 define este contrato así:

*"En el arrendamiento de obras o servicios, una de las partes se obliga a ejecutar una obra, o a prestar a la otra un servicio por precio cierto."*

31 L.P.R.A. Sec. 4013.

En el arrendamiento de servicios una parte se obliga a prestar un servicio y otra a pagar por ello un precio cierto. Aunque los tratadistas, al distinguir el arrendamiento de obras del de servicios, señalan que en aquél se espera un resultado y en éste no, es obvio que el servicio prestado tiene que estar bien hecho. Quien paga por un servicio tiene derecho a esperar que el mismo satisfaga adecuadamente la necesidad por la cual contrató el servicio. Si un auto que tiene problemas con el motor es llevado a un taller de reparaciones y, luego de practicadas las mismas, continúan los problemas, una posible explicación es que el servicio no se prestó adecuadamente.

En este caso, la recurrida alegó que el motor continuaba teniendo filtraciones de aceite, cablería suelta y mangas desconectadas. El técnico de DACO observó aceite desparramado por distintas áreas del motor. Sobre la cablería y las mangas sueltas llama la atención el hecho de que este aspecto se descubriera en la tercera ocasión en que la recurrente se quejó de problemas con el motor. En la primera y segunda ocasión la recurrida no se quejo de esto ni el recurrente advirtió la condición, que debió ser apreciable a simple vista. Recordemos, además, que en la tercera ocasión el auto se encontraba bajo el control de la recurrida desde hacía varias semanas. Tan pronto observó los cables y las mangas sueltas, el recurrente denunció que el motor había sido *"traqueteado"*, es decir, que había sido intervenido por una tercera persona.

En el balance justiciero de estos hechos nos parece que lo más probable no es que la cablería y las mangas se hubieran desconectado por actuaciones del mecánico recurrente.

En cuanto al aceite desparramado en el motor y las filtraciones del mismo, nos parece que estas sí están relacionadas con la calidad del servicio prestado. El recurrente intervino con la tapa del bloque del motor, con las flautas de las válvulas y con los caballetes. Las válvulas y los caballetes requieren flujo de aceite para reducir la fricción durante su funcionamiento. Si la tapa del motor no está bien puesta y ajustada o si está retorcida por efecto de calentamiento excesivo puede producir escapes de aceite del interior del motor. Dependiendo de la magnitud del escape, el aceite se regará sobre el motor más tarde o más temprano. A nuestro juicio, el aceite desparramado sobre el motor, que fue detectado desde la primera inspección de DACO, está relacionado con el trabajo de reparación en la tapa del motor, las válvulas y el caballete. A menos que ello se debiera a otros desperfectos, cosa que el recurrente no ha alegado ni demostrado, es razonable concluir que los escapes de aceite indican fallas en la reparación.

Concordamos con la agencia en cuanto a la resolución del contrato. Sin embargo, la particularidad de los hechos nos obliga a modificar la disposición final del foro administrativo acudiendo a un principio general del derecho, para así evitar un fracaso de la justicia. Al resolverse un contrato las partes están obligadas a devolverse mutuamente las prestaciones. [6] El mecanico recurrente podría devolver su prestación, el dinero, pero la recurrida no podría devolver la suya porque ésta consistió en el esfuerzo físico y la destreza mental y manual que invirtió el mecanico en su trabajo. Devolverle a la recurrida el valor total de lo que DACO estimó como costo del trabajo sería permitir un enriquecimiento injusto en favor de la recurrida. El enriquecimiento injusto es un principio general del derecho que puede aplicarse en situaciones muy distintas entre sí, siempre y cuando tengan en común un elemento: que de no aplicarse se perpetraría la inequidad de que alguien se enriqueciese injustamente en perjuicio de otro. *Compañía Popular v. Corte,* 63 D.P.R. 121 (1944).

DACO estimó el costo del trabajo en $1,500.00 y ordenó la devolución total de esta suma a la recurrida. No pudiendo la recurrida devolver su prestación en este caso, nos parece razonable que se devuelva la suma de $750.00.

Por los fundamentos expuestos se expide el auto solicitado y se modifica la resolución del Departamento de Asuntos del Consumidor a los efectos de ordenarle al recurrente que reembolse a la recurrida la expresada suma de $750.00.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

El Juez Rivera Pérez disiente sin opinión escrita.

Aida I. Oquendo Graulau
Secretaria General

## ESCOLIOS 97 DTA 128

1. Las partes no informan el tiempo exacto que el vehículo estuvo en situación de depósito en el taller, limitándose el recurrente a indicar que fue *"casi un año"*.

2. 31 L.P.R.A. Sec. 3011.

3. 31 L.P.R.A. Sec. 3018.

4. 31 L.P.R.A. Sec. 3018.

5. 31 L.P.R.A. Sec. 3261.

6. La parte perjudicada por el incumplimiento tiene derecho, a su opción, al cumplimiento específico o a la resolución del contrato, con el resarcimiento de daños en ambos casos. Artículo 1077, Código Civil, 31 L.P.R.A.

Sec. 3052. Sin embargo, la recurrida no solicitó resarcimiento de daños. El segundo técnico de DACO informó que la recurrida *"por no tener confianza [en el recurrido] solicitó la devolución del dinero pagado"*.